UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-167-TBR

**KATHLEEN DONAIS, as the personal representative and
next of kin of ALAN JAMES DONAIS**                                          **PLAINTIFF**

**v.**

**GREEN TURTLE BAY, INC.**                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' competing motions for partial summary judgment. The Plaintiff asks this Court to find that Tennessee law governs her claim for loss of parental consortium. Docket Number ("DN") 24. The Defendant has responded. DN 28. The Plaintiff has replied. DN 33. Contemporaneous to the Plaintiff's motion, the Defendant moved to dismiss the Plaintiff's loss of consortium claim. DN 25. The Plaintiff has responded. DN 27. Because the motions address the same issue, the Court addresses them jointly. For the following reasons the Plaintiff's motion is DENIED and the Defendant's motion is GRANTED.

## BACKGROUND

On September 12, 2009, Alan Donais, a citizen of Tennessee, died in a boat fire and explosion on Lake Barkley near Grand Rivers, Kentucky. The Plaintiff, Kathleen Donais, is Mr. Donais's adult daughter and the personal representative of his estate. She alleges that her father's death was directly and proximately caused by the negligence of the Defendant, Green Turtle Bay, Inc. As part of her wrongful death suit,[1] Ms. Donais seeks to recover compensatory damages, including loss of parental consortium. The Kentucky Court of Appeals, interpreting a decision of the Kentucky Supreme Court, has held that adult children may not recover for loss of

---

[1] Throughout this opinion, for the purposes of economy, the court uses the term wrongful death remedies or statutes to include survival statutes and causes of action.

parental consortium.  Tennessee, on the other hand, recognizes that adult children have a cause of action for loss of parental consortium.  As a result the Court is confronted with the present motions.

Alan Donais was domiciled in Nashville, Tennessee at the time of his death. Approximately one month before he died, Mr. Donais decided to travel on his boat from Nashville to New Johnsonville, Tennessee.  The route from Nashville to New Johnsonville takes boaters north into Kentucky via the Cumberland River, where it forms Lake Barkley.  From Lake Barkley, the route crosses into Kentucky Lake and turns south on the Tennessee River, where it eventually runs to New Johnsonville.  During the first leg of this voyage, Mr. Donais's boat was damaged when he hit a submerged object in Lake Barkley.  On August 10, 2009, Mr. Donais hired the Defendant, Green Turtle Bay, Inc., to repair the damage.

Green Turtle Bay runs a large marina and resort on Kentucky and Barkley Lakes.  In addition to recreational services, the company provides a full service boat works, which is capable of repairing commercial and recreational vessels.  Green Turtle Bay worked on Mr. Donais's boat for approximately one month and in early September of 2009, notified him that the repairs were complete.  Mr. Donais then returned to Green Turtle Bay to pick up his boat with the intention of completing his trip to New Johnsonville.  On September 12, 2009, Mr. Donais paid for the repairs and purchased fuel from the marina.  Mr. Donais then started the boat, which exploded shortly thereafter.  Mr. Donais died in the explosion and resulting fire, which damaged five other vessels in the marina.   Kathleen Donais brings the present action to recover for the wrongful death of her father, which she claims was caused by Green Turtle Bay's negligent repair.

As part of that claim, Ms. Donais seeks damages for loss of parental consortium with her

father.  At the time of his death, Mr. Donais was living with his daughter and grandson in Nashville.  He had moved to Nashville in 2008 so that he could be closer to his family and had maintained a close relationship with them prior to moving.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).  Absent an issue of material fact, summary judgment will be granted.

## DISCUSSION

Both parties move for partial summary judgment on the issue of what law is applicable to

the loss of consortium claim.  The main issue to be decided is whether Tennessee law or Kentucky law is applicable.  The Court will first address the relevant distinctions between loss of consortium in Kentucky and Tennessee.  The Court will then determine which law applies.

## I.    Parental Consortium Claims in Kentucky and Tennessee.

Consortium is generally defined as the "benefits that one person . . . is entitled to receive from another, including companionship, cooperation, affections, aid, [and] financial support[.]" BLACK'S LAW DICTIONARY 328 (8th ed. 2004).  A loss of consortium claim was historically limited to a husband's right to bring suit for loss of companionship resulting from injury to or the death of his wife.  Under the modern law, however, many jurisdictions have expanded the cause of action to either spouse, to parents for the loss of their children, and to children for the loss of their parents.  The last category, commonly known as "parental consortium," is at issue in this case.

Adult children in Tennessee may recover for the loss of consortium resulting from the wrongful death of a parent.  *See Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 601-602 (Tenn. 1999) ("Consortium losses are not limited to spousal claims but also necessarily encompass a child's loss, whether minor or adult.").  The *Jordan* Court was clear that the pecuniary value of a parental consortium claim by an adult child will be tempered if the child's relationship is "too attenuated from their parents . . . to proffer sufficient evidence of consortium losses."  *Id.* at 601.  Nonetheless, a cause of action for loss of parental consortium exists in Tennessee and "shall take into consideration factors such as closeness of the relationship and dependence."  *Id.*

Kentucky does not recognize a cause of action for loss of parental consortium by adult children.  In *Giuliani v. Guiler*, 951 S.W.2d 318, 323 (Ky. 1997), the Kentucky Supreme Court

held that a *minor* child may maintain a cause of action for loss of parental consortium.  The court did not, however, address whether an adult child had a cause of action for loss of parental consortium, and still has yet to take up this specific issue.

Since *Giuliani*, the Kentucky Court of Appeals has twice considered whether an adult child has a cause of action for loss of parental consortium.  The panels in *Smith v. Vilvarajah*, 57 S.W.3d 839 (Ky. App. 2000), and *Clements v. Moore*, 55 S.W.3d 838 (Ky. App. 2000), held that adult children in Kentucky may not recover for loss of parental consortium.  This decision was not without its detractors, however, as Judge Barber in *Smith* and Judge Combs in *Clements* dissented and would have extended the holding of *Giuliani* to adult children.  *Smith*, 57 S.W.3d at 844; *Clements*, 55 S.W.3d at 841.  Until such time as the Kentucky Supreme Court considers the issue, or the Kentucky legislature expands the scope of recovery, adult children will continue to be barred from bringing loss of parental consortium claims.

Because of the distinction between the states, Kathleen Donais seeks to have the Court hold that Tennessee law governs her consortium claim.  As explained below, Tennessee law is only applicable if the Court has admiralty jurisdiction and application of admiralty's choice of laws rules show that Tennessee is the state with the most significant relationship in the case.

## II.    Substantive Admiralty Law is Applicable.

Ms. Donais's amended complaint bases the Court's jurisdiction on 28 U.S.C. § 1332. She now seeks to have the Court apply substantive admiralty law to the maritime tort at issue. Although she did not plead admiralty jurisdiction under 28 U.S.C. § 1333(1) or make an admiralty election under Federal Rule of Civil Procedure 9(h), "the substantive rules of admiralty law will apply to a case if it falls within the Court's admiralty jurisdiction, regardless of whether or not the parties actually invoked that jurisdiction."  *Bodnar v. Hi-Lex Corp.*, 919 F. Supp.

5

1234, 1236 (N.D. Ind. 1996) (citing *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir. 1988)); *see Bartel v. A-C Prod. Liab. Trust*, 461 F. Supp. 2d 600, 603 (N.D. Ohio 2006) ("Admiralty jurisdiction . . . can be applied if a substantial nexus to maritime law and activities is found, whether the parties have or have not asserted admiralty jurisdiction.") (citations omitted); *Aljalham v. Am. Steamship Co.*, 724 F. Supp. 2d 729, 737 n.7 (E.D. Mich. 2010) (plaintiff's assertion of jurisdiction based on "general federal question jurisdiction" did not "foreclose the possibility of applying federal maritime and admiralty law to the underlying claims").

The two-part test for admiralty jurisdiction over maritime torts was articulated by the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). In order to have admiralty jurisdiction, the tort must have occurred on navigable waters. *Id.* at 534. This is the "location" test. In addition, the activity giving rise to the tort must have a "connection with maritime activity." *Id.* The "connection" test is comprised of two sub-parts. A connection only exists if the "general features of the incident involved" could have "a potentially disruptive impact on maritime commerce." *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 364 n.2 (1990)). Additionally, the "general character" of the "activity giving rise to the incident" must bear a "substantial relationship to traditional maritime activity." *Id.* (quoting *Sisson*, 497 U.S. at 365, 364, and n.2). The jurisdictional test is satisfied in the present case.

### A. The "location" test.

There is no question that the tort at issue occurred on navigable waters. Long ago the Supreme Court found that "rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used . . . as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *The Daniel Ball*, 77 U.S. 557, 563 (1871). Green Turtle Bay's marina sits

6

on Lake Barkley, which is part of the Cumberland River.  These waters are heavily traveled, are used in substantial commercial endeavors, and are undoubtedly navigable.

Green Turtle Bay attempts to remove this Court's admiralty jurisdiction by arguing that Mr. Donais's boat was repaired on dry land and the negligent repair, if any, could not have occurred on navigable waters.  This argument is without merit.  The location of a tort is the place where the injury occurs.  *See, e.g., Taghadomi v. United States*, 401 F.3d 1080, 10804 (9th Cir. 2005) ("The situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs."); *Executive Jet Aviation, Inc. v. City of Cleveland*, 448 F.2d 151, 152 (6th Cir. 1971) *aff'd* 409 U.S. 249 (jurisdiction over admiralty torts "depends on upon the location of the injury.") (citation omitted).  Even though the repairs took place on dry land, the injury occurred on navigable waters.  Without an injury there is no tort.  The injury in this case, the death of Mr. Donais, occurred on navigable waters, fulfilling the first prong of the jurisdictional test.

### B.  The "connection" test.

The second prong of the jurisdictional test examines whether the "general features" of the activity giving rise to the tort could have a disruptive effect on maritime commerce and whether the "general character" of that activity bears a substantial connection to traditional maritime activity.  "Activity" within the meaning of the jurisdictional test covers a variety of actions.  The Supreme Court has found that it includes, but is not limited to, the navigation of vessels, *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675-77 (1982), the "storage and maintenance of a vessel at a marina on navigable waters," *Sisson*, 497 U.S. at 365, and "damage by a vessel in navigable waters to an underwater structure," *Great Lakes Dredge*, 513 U.S. at 539.  In the present case, the relevant activity is the repair and maintenance of vessels used on navigable

waters.

The "general features" of the repair and maintenance of boats used on navigable waters has the potential to disrupt maritime commerce. The determination of whether an activity might disrupt maritime commerce is not based on the actual effects of the activity in any particular case. "Rather, a court must assess the general features of the type of incident to determine whether such an incident is likely to disrupt commercial activity." *Sission*, 497 U.S. at 363. Negligent repair and maintenance could result in collisions or other accidents on navigable waters and hinder the flow of commercial traffic through vital waterways. In this particular case, it is alleged that the negligence caused an explosion and fire that damages other vessels, including a commercial tow boat. The "general feature" prong of the "connection" test is fulfilled because the repair and maintenance of boats used on navigable waters has the potential to disrupt maritime commerce.

Finally, the "general character" of the repair and maintenance of boats used on navigable waters bears a significant relationship to traditional maritime activity. In making this finding, a court must ask "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Great Lakes Dredge*, 527 U.S. at 539-40. The repair and maintenance of boats used on navigable waters cannot be separated from traditional maritime activity. Without repair and maintenance, traditional maritime activity would cease. Repair and maintenance makes maritime activity possible, and when it is negligently conducted, this commercially important system is jeopardized. The "general character" prong of the "connection" test is fulfilled because repair and maintenance of boats used on navigable waters is significantly related to traditional maritime activity.

### III.    Application of Admiralty's Choice of Laws Rules.

The Court has admiralty jurisdiction over the tort at issue.  "With admiralty jurisdiction comes the application of substantive admiralty law."  *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864 (1986).  In admiralty, state causes of action remain available to remedy the wrongful death of non-seamen on territorial waters.  *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996) ("*Calhoun I*").  Mr. Donais was a non-seaman killed on Kentucky's territorial waters and a state cause of action for wrongful death is available to his estate.  The key question for the purposes of the present motion is what states' wrongful death laws should govern, Kentucky or Tennessee?  If this Court were sitting in diversity, Kentucky's choice of laws rules would be used to answer this question.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  Because it is sitting in admiralty, however, the Court will apply admiralty's choice of laws rules.

The rules governing the choice of laws in admiralty were developed in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306 (1970).  Although *Lauritzen*, *Romero*, and *Rhoditis* required the Supreme Court to choose between the laws of different countries, the factors articulated in the cases have repeatedly been applied to maritime tort cases involving a choice between the laws of two states.  *See, e.g., Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 345-48 (3d Cir. 2000) ("*Calhoun II*"); *Scott v. Eastern Airlines, Inc.*, 399 F.2d 14, 25-29 (3d Cir. 1968); *Hurd v. United States*, 134 F. Supp. 2d 745, 769-71 (D.S.C. 2001).

When selecting between a choice of laws, a court should consider: 1) the place of the wrongful act, 2) the law of the flag, 3) the domicile of the injured, 4) the allegiance of the defendant shipowner, 5) the place where the contract of employment was made, 6) the

inaccessibility of the foreign forum, 7) the law of the forum, and 8) the shipowner's base of operations. *Lauritzen*, 345 U.S. at 583-91; *Rhoditis*, 398 U.S. at 308-09. Clearly, not all of these factors are applicable in a case involving a tort that occurred on a state's territorial waters. As pointed out by the Supreme Court, however, the *Lauritzen* test "is not a mechanical one," and the factors were "not intended as exhaustive." *Rhoditis*, 398 U.S. at 308-09. Instead the *Lauritzen* factors represent "a departure from the application -- in admiralty -- of the *lex loci delecti* rule and a move toward analyzing which state ha[s] the most significant relationship to the incident and the dominant interest in having its law applied." *Calhoun II*, 216 F.3d at 346.

The Restatement (Second) of Conflict of Laws acknowledges the principles of *Lauritzen*, *Romero*, and *Rhoditis* "as examples of 'cases emphasizing the importance of the applying the local law of that state which has the dominant interest in the decision of the particular issue.'" *Scott*, 399 F.2d at 29 n.6 (quoting Restatement (Second) of Conflict of Laws § 145, Reporter's Notes (1971)). Section 6 of the Restatement guides that a choice of laws decision should consider: 1) the needs of the interstate and international systems, 2) the relevant policies of the forum, 3) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue, 4) the protection of justified expectations, 5) the basic policies underlying the particular field of law, 6) certainty, predictability, and uniformity of result, and 7) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2) (1971). When applying the principles of § 6, a court should determine the state with the most significant relationship to the issue by considering the following contacts: 1) the place where in the injury occurred, 2) the place where the conduct causing the injury occurred, 3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and 4) the place where the relationship, if any, between the

10

parties is centered.  Restatement (Second) of Conflict of Laws § 145(2) (1971).

Applying § 145 to the facts of the present case clearly shows that Kentucky has the most significant relationship.  First, the place where the injury occurred was Kentucky.  The boat explosion and fire that killed Mr. Donais occurred on Kentucky's territorial waters and was within the state's geographical boundaries.  Second, the alleged conduct causing the explosion occurred in Kentucky.  The repairs to Mr. Donais's boat were completed in Kentucky, and Ms. Donais alleges that those repairs were the direct and proximate cause of the explosion.  Third, Mr. Donais was domiciled in Tennessee at the time of his death, and Green Turtle Bay is a Kentucky corporation with its principle place of business in Kentucky.  Finally, the relationship between Mr. Donais and Green Turtle Bay was centered in Kentucky.  All of the relevant factual events occurred in Kentucky.  After his boat was damaged on Kentucky's waters, Mr. Donais sought out and contracted with Green Turtle Bay for repairs.  He also paid for the repairs and took repossession of the boat while in Kentucky.  Based on these facts, the first, second, and fourth factors clearly show Kentucky has the most significant relationship.  Any weight given to the fact that Mr. Donais was a citizen of Tennessee is balanced by the fact that Green Turtle Bay is incorporated and has its principle place of business in Kentucky.  None of the factors in § 145 point directly and solely to Tennessee as the state with the most significant relationship.  Accordingly, Kentucky is the state with the most significant relationship to the issues in this present case.

Ms. Donais argues that Kentucky does not have the most significant relationship because her father's presence in Kentucky was merely adventitious.  In support of her argument, Ms. Donais cites to and relies upon the Third Circuit's opinion in *Scott v. Eastern Airlines*, 399 F.2d 14 (3d Cir. 1968).  The plaintiff's decedent in *Scott* was a resident of Pennsylvania who was

killed in a plane that "crashed into the navigable waters of Boston Harbor shortly after takeoff . . . ." *Id.* at 18.  In deciding whether to apply Pennsylvania or Massachusetts's wrongful death statute, the court examined the *Lauritzen* factors and found that "the facts of the instant case exemplify a situation where the place of the wrong was quite adventitious and where the most significant relations and contacts are with Pennsylvania rather than Massachusetts." *Id.* at 28. Ultimately the court found that Pennsylvania law should apply to the wrongful death claim because "it would be most inappropriate, if not inequitable to apply the law of Massachusetts simply because [the defendant's] aircraft happened to crash into that state's navigable waters." *Id.* at 29.  The court's decision to apply Pennsylvania law was based primarily on the fact that the crash into Massachusetts's waters was a fortuitous event that had little connection with the state.

The *Scott* decision is distinguishable from and not persuasive in the present case.  First, *Scott* was decided in 1968, and the court found that it had maritime jurisdiction (allowing it to conduct a choice of laws analysis) merely because the plane had crashed into navigable waters. *Id.* at 25.  The Supreme Court's 1972 decision in *Executive Jet Aviation v. Cleveland*, 409 U.S. 249, 250 (1972), involved a similar situation where a plane crashed into the navigable waters of Lake Eire shortly after takeoff.  Despite crashing into navigable waters, the Court declined the application of maritime jurisdiction because the wrong did not "bear a significant relationship to traditional maritime activity." *Id.* at 268.  In light of the *Executive Jet* decision, the outcome in *Scott* would be different if decided today.  Because the jurisdictional test is no longer based solely on the location of the wrong, there would be no choice of laws analysis allowing the *Scott* Court to decline the application of Massachusetts law unless a relationship to traditional maritime activity was otherwise shown.

Jurisdictional considerations aside, the Court still finds that *Scott* is distinguishable from

the present case because Mr. Donais's presence in Kentucky was not "adventitious." Unlike a plane crashing into Boston Harbor, Mr. Donais was purposefully traveling on Kentucky's territorial waters in order to reach his destination. Mr. Donais did not choose for his boat break down, but when it did, he chose to have it repaired in Kentucky by Green Turtle Bay. He contracted for the boat to be repaired in Kentucky and returned to the state to retrieve the boat once it was repaired. "If [the Court] were to accept [Ms. Donais's] interpretation of the *Scott* [C]ourt's concept of fortuity, virtually every accidental injury would qualify as 'fortuitous,' thus diluting to the point of extinction any application of the law of the state in which an injury or death occurred." *Calhoun II*, 216 F.3d 338, 347-48 (3d Cir. 2000). Mr. Donais's presence in Kentucky was not adventitious or fortuitous.

The substantial nature of Mr. Donais's contacts with Kentucky shows that Kentucky as the most significant relationship to this case. Mr. Donais's presence in the state was purposeful and not fortuitous, and none of the events giving rise to this case occurred in Tennessee. The mere fact that Mr. Donais was domiciled in Tennessee is not enough to apply the law of that state when balanced against the weight of other facts that counsel the application of Kentucky law. Accordingly, Kentucky law will govern the issue of damages resulting from the loss of parental consortium. Because Kentucky does not allow adult children to recover for loss of parental consortium, the cause of action on this issue will be dismissed.

## CONCLUSION

For the foregoing reasons the Plaintiff's motion for partial summary judgment is **DENIED** and the Defendant's motion for partial summary judgment is **GRANTED**. The Plaintiff's cause of action for loss of parental consortium is **DISMISSED**.